IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHIRLENE HAGLER,

          Plaintiff,

vs.                              Case No. 09-1216-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 7, 2007, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 15-24). Plaintiff alleges that she has been disabled since September 6, 2005 (R. at 15). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 17). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since September 6, 2005, the alleged onset date of disability (R. at 17). At step two, the ALJ found that plaintiff had the

4

following severe impairments: diabetes mellitus, status post right shoulder surgical repair, status post seizure episode, chronic obstructive pulmonary disease, osteoporosis and hypertension (R. at 17). The ALJ also found that plaintiff had a non-severe impairment of depression (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18). After determining plaintiff's RFC (R. at 19), the ALJ found at step four that plaintiff is able to perform past relevant work as a school psychologist (R. at 23). In the alternative, at step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23-24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III. Did the ALJ err by failing to consider the statements by 3 co-workers of the plaintiff?**

Plaintiff retired as a school psychologist in July 2005, but worked thereafter on a part-time basis testing gifted children (R. at 22, 584, 599). Plaintiff is a diabetic and wears an insulin pump (R. at 588). In his decision, the ALJ summarized plaintiff's testimony, in relevant part, as follows:

> She [plaintiff] says that her blood sugar
> levels fluctuate a lot and that after these
> fluctuations she is fatigued and sometimes
> her vision becomes blurry. She testified
> that she takes a nap of one to two hours

5

> everyday. She also said that she can work
> for about two or three days of the week, but
> becomes too tired to work a 5-day week...She
> alleges that she has less stamina and energy
> than she used to have. She also alleges that
> she reads very little because her ability to
> concentrate is diminished. She states that
> her memory is poor, having forgotten family
> and church events, and sometimes forgetting
> the proper word to use when speaking.

(R. at 20-21). The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible (R. at 21). However, the ALJ never mentioned the fact that 3 co-workers submitted written statements concerning plaintiff's ability to work.

The first statement is from Paula Hewes, a school psychologist. Her letter, which is undated, states in relevant part:

> ...I have worked with Shirlene Hagler for
> seven years. I am writing to let you know of
> my observations of her condition while she is
> working.
>
> When Shirlene's blood sugar is normal, she is
> an exceptionally bright individual. She is
> a highly regarded school psychologist.
> However, when her blood sugar is too high or
> too low, she becomes visibly changed. At
> those times, she appears very confused and is
> unable to perform functions such as driving,
> writing, walking or talking. On one
> occasion, it was necessary for the school
> nurse to give Shirlene an injection of
> insulin because she was so disoriented that
> she was unable to medicate herself.
> Shirlene's condition also affected her job in
> that she was frequently late to work due to
> highs or lows. She often had to cancel
> meetings or have someone else cover her

> meetings due to unstable blood sugar.
> Shirlene appears to tire very easily and when
> she is tired, her blood sugar is less stable.

(R. at 168).

A second letter, from Ron Lang, a special education assistant, and dated April 11, 2007, states the following:

> I worked with Shirlene Hagler for two years
> at the Special Education office here in Dodge
> City. During that time I witnessed numerous
> times when she would forget what she was
> trying to do. This was caused by her sugar
> level either being too high or too low. From
> time to time we would have to take her home
> during the work day due to her diabetes. On
> one occasion, I found her lying on the floor
> under her desk. She indicated that she was
> light headed and didn't want to fall and hurt
> herself.

(R. at 169).

The third letter, also dated April 11, 2007, is from Mrs. Maria Aceves, an interpreter for the school district:

> My name is Maria Aceves. I have been an
> interpreter for SKACD #613 for about 9 or 10
> years now. I met Mrs. Shirlene Hagler even
> before then, since I was working for another
> program in this same building, which is the
> Administration Building, at 1000 2nd Ave.
> Mrs. Hagler had a lot of health problems, but
> here lately, it has been worst. I had to take
> her home several times, since she was unable
> to drive. Sometimes, it was so bad, she
> would talk nonsense. Sometimes she was unable
> to even walk. She was late to work
> frequently, due to her illness, and sometimes
> she had to leave earlier for the same reason.
> I know that some of the other co-workers
> helped her too...We even went together to
> help her at one time when she had an accident
> as she was going to Wilroads Gardens. The
> weather was bad, and she lost control,

>           somehow, and we had to take her home that
>           day.  I always worry about her.  I think she
>           should stay home and take care... .

(R. at 170).

The question before the court is whether it was reversible error for the ALJ to not even mention the statements of plaintiff's 3 co-workers. In the case of Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996), the court held as follows:

>           In the absence of ALJ findings supported by
>           specific weighing of the evidence, we cannot
>           assess whether relevant evidence adequately
>           supports the ALJ's conclusion...The record
>           must demonstrate that the ALJ considered all
>           of the evidence, but an ALJ is not required
>           to discuss every piece of evidence [citation
>           omitted] Rather, in addition to discussing
>           the evidence supporting his decision, the ALJ
>           also must discuss the uncontroverted evidence
>           he chooses not to rely upon, as well as
>           significantly probative evidence he rejects.

Clifton, 79 F.3d at 1009-1010.

Two published opinions have discussed the ALJ's consideration of, or failure to consider, the statements or testimony of witnesses. In the first case, Adams v. Chater, 93 F.3d 712 (10th Cir. 1996), plaintiff alleged error by the ALJ for not stating specifically his findings on claimant's wife's credibility. The court held as follows:

>           Here, it is clear that the ALJ considered the
>           testimony of claimant's wife in making his
>           decision because he specifically referred to
>           it in his written opinion [citation omitted]
>           We decline claimant's invitation to adopt a
>           rule requiring an ALJ to make specific
>           written findings of each witness's

> credibility, particularly where the written decision reflects that the ALJ considered the testimony.

Adams, 93 F.3d at 715.

In the second case, Blea v. Barnhart, 466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments. The court held as follows:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." Adams, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision." Adams, 93 F.3d at 715. Additionally, Mrs. Blea's testimony regarding her husband's suicidal thoughts is not only uncontroverted; it serves to corroborate Dr. Padilla's psychiatric examination of Mr. Blea, where he stated that Mr. Blea has been dysthymic for years. [citation to record omitted] Thus, the ALJ's refusal to discuss why he rejected her testimony violates our court's precedent, and requires remand for the ALJ to incorporate Mrs. Blea's testimony

9

> into his decision. "Without the benefit of
> the ALJ's findings supported by the weighing
> of this relevant evidence, we cannot
> determine whether his conclusion[s] ... [are]
> supported by substantial evidence." Threet,
> 353 F.3d at 1190; see also Baker v. Bowen,
> 886 F.2d 289, 291 (10th Cir.1989) ("[W]here
> the record on appeal is unclear as to whether
> the ALJ applied the appropriate standard by
> considering all the evidence before him, the
> proper remedy is reversal and remand.").

Blea, 466 F.3d at 915.

As in Blea, the ALJ in the case before the court made no mention of the statements of any of plaintiff's 3 co-workers. Thus, it is not at all clear that the ALJ considered their statements in making his decision. All three witnesses not only corroborate plaintiff's testimony regarding her inability to work on a full-time basis, they add additional details regarding her limitations not even mentioned by the plaintiff in her testimony. For example, Ms. Hewes, a school psychologist, stated that when her blood sugar is too high or too low, she appears very confused and is unable to perform functions such as driving, writing, walking or talking. Plaintiff is frequently late to work because her blood sugar is too high or too low, and she often has to cancel meetings or have someone cover for her due to unstable blood sugar. Mr. Lang witnessed numerous occasions when she would forget what she was trying to do because her blood sugar level was too high or too low, and that they had to take her home from time to time due to problems with her diabetes. Ms. Aceves

also noted that they had to take her home several times from work because she was unable to drive. Sometimes, plaintiff was so bad she would talk nonsense and was unable to walk. She was often late to work or had to leave early. Ms. Aceves stated that plaintiff has had a lot of health problems, but that lately, it has been worse.

The statements of the 3 witnesses support and add additional details to plaintiff's testimony, and they are in general agreement with each other regarding plaintiff's limitations due to her diabetes. A note in the medical record from August 30, 2005 indicates that plaintiff's diabetes is "poorly controlled" (R. at 459). The 3 statements provide detailed information of the impact of plaintiff's poorly controlled diabetes on her ability to work full-time. There is no evidence in the record disputing the testimony of the plaintiff or the 3 witnesses regarding her limitations at work because of her diabetes. The 3 statements raise serious questions about plaintiff's ability to work on a full-time basis. Furthermore, the ALJ, in making his RFC findings, found that plaintiff had greater limitations than those set forth in the state agency physical assessments. The ALJ based his findings that plaintiff had greater limitations on the medical record and the testimony of the plaintiff (R. at 22-23); however, the ALJ made no mention at any time of the statements of plaintiff's 3 co-workers. Given the absence of any

11

mention of the uncontroverted and significantly probative statements of the 3 witnesses regarding plaintiff's limitations in the workplace, this case shall be remanded in order for the ALJ to specifically consider the statements of the 3 co-workers, and to make RFC findings after determining what weight should be accorded to their observations of plaintiff's limitations in the workplace.

On remand, the ALJ shall make his RFC findings in accordance with SSR 96-8p, which requires that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7.

Furthermore, the ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. SSR 96-8p, 1996 WL 374184 at *5; Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007); Lamb v. Barnhart, 85 Fed. Appx. 52, 57 (10th Cir. Dec. 11, 2003). In light of the fact that: (1) the ALJ found that plaintiff has greater

limitations than those set forth in 2 state agency physical assessments[1] (which were filled out by persons who did not treat or examine the plaintiff) (R. at 22-23), (2) the ALJ failed to mention the statements of 3 co-workers regarding plaintiff's limitations in the workplace, and (3) there is no other medical opinion evidence regarding plaintiff's physical limitations, on remand, the ALJ may consider obtaining an evaluation of plaintiff's functional limitations from her treating doctor(s), and/or obtain a detailed evaluation from a consulting doctor who personally examines her. Fleetwood, 211 Fed. Appx. at 741; Lamb, 85 Fed. Appx. at 57.

**IV. Did the ALJ err in his consideration of plaintiff's depression and migraine headaches?**

The ALJ found that plaintiff's depression was not a severe impairment (R. at 17-18). The ALJ relied on the psychological assessment prepared by Dr. Schwartz (R. at 18), who found that plaintiff had adequate attention, concentration and short-term memory for simple tasks. Dr. Schwartz concluded that he could not detect "any severe psychiatric symptoms which would interfere with her functioning on the job" (R. at 283). The ALJ also

---

[1] The first assessment, dated March 6, 2006, was signed by an "SDM." SDM stands for a "Single Decision Maker." An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources. Herrman v. Astrue, Case No. 09-1297-SAC (D. Kan. Sept. 29, 2010).

relied on a state agency mental assessment (R. at 17-18, 22) which found that plaintiff's mental impairments were not severe (R. at 512-524). Plaintiff does not cite to any medical evidence indicating that plaintiff's depression is a severe impairment or that plaintiff's depression results in limitations in plaintiff's ability to work.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). Substantial evidence supports the ALJ's findings regarding plaintiff's depression; the court finds no error in the ALJ's consideration of plaintiff's depression.

Plaintiff also alleges that the ALJ ignored the evidence of plaintiff's migraines. The ALJ did not mention the fact that plaintiff had been diagnosed with migraine or severe headaches by her treating physicians (R. at 446, 468). Because this case is being remanded in order for the ALJ to consider the statements from 3 co-workers, on remand, the ALJ should also address the

evidence regarding plaintiff's migraine headaches.  However, the
court would note that plaintiff must provide medical evidence
showing that she has migraine headaches and how severe they are
during the time that she alleges she was disabled.  Plaintiff
must provide evidence showing that her migraine headaches affect
her functioning.  20 C.F.R. § 404.1512(c) (2010 at 359).
Plaintiff must show more than the mere presence of a condition or
ailment.  If the medical severity of a claimant's impairments is
so slight that the impairments could not interfere with or have a
serious impact on the claimant's ability to do basic work
activities, the impairments do not prevent the claimant from
engaging in substantial work activity.  Hinkle v. Apfel, 132 F.3d
1349, 1352 (10th Cir. 1997).  Plaintiff did not cite to any
medical evidence indicating that her migraine headaches would
interfere with or seriously impact her ability to perform basic
work activities.

**V. Did the ALJ err in his step four analysis?**

Plaintiff also argues that the ALJ failed to make the
required findings at step four.  The court does not need to reach
this issue because it may be affected by the ALJ's resolution of
the case on remand.  See Robinson v. Barnhart, 366 F.3d 1078,
1085 (10th Cir. 2004).  However, the court will set forth the
requirements for step four findings by the ALJ.

At step four, the ALJ is required by Social Security Ruling

15

(SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity. Henrie v. United States Dep't of HHS, 13 F.3d 359, 361 (1993). Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these three phases, the ALJ must make specific findings. Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[2]

---

[2] In Winfrey, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ. The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged. The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step

16

An ALJ can comply with these requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis. Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).[3] When the ALJ fails to make findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis. Bowman v. Astrue, 511

---

> five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

Winfrey, 92 F.3d at 1025.

[3]The ALJ's findings in Doyal were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

Doyal, 331 F.3d at 760. The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator. 331 F.3d at 761. As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

17

F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.).  However, when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error.  Martinez v. Astrue, 316 Fed. Appx. 819, 824 (10th Cir. Mar. 19, 2009); see Murrell v. Shalala, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

**VI. Did the ALJ in his analysis at step five?**

Plaintiff also argues that the ALJ erred in his step five analysis.  The court does not need to reach this issue because it may be affected by the ALJ's resolution of the case on remand.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  However, the court will briefly address this issue in order to expedite resolution of this case.

If the Commissioner finds that plaintiff cannot perform past relevant work given his RFC, the Commissioner will then determine if plaintiff can perform work which exists in significant numbers either in the region where such individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).  Plaintiff argues that the vocational expert (VE), by relying on job information from SOC codes, which represent a larger category of jobs, failed to provide accurate information about the number of jobs available for each specific job identified by the VE as a job that plaintiff could perform.

In reviewing the transcript of the hearing, it is unclear how accurately the VE's testimony, which referenced SOC codes, reflects the number of jobs available for each specific job identified by the VE as a job that plaintiff can perform (R. at 602-604). On remand, if the ALJ makes findings at step five, the ALJ should obtain from the VE or other appropriate source the number of jobs available for each specific job identified as a job that plaintiff could perform.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 13th day of October, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge